1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

LAVERNE JOHNSON,

               Petitioner,

    v.

KEVIN CHAPPELL, Warden of
California State Prison at San Quentin,

              Respondent.

    NO. C 95-0305 TEH

ORDER

**DEATH PENALTY CASE**

### INTRODUCTION

On December 17, 1987, petitioner was convicted by a San Mateo County jury of two counts of first degree murder, Cal. Penal Code § 187, and one count of arson, Cal. Penal Code § 451(b). The jury also found true the multiple murder special circumstance allegation, Cal. Penal Code § 190.2(a)(3). The same jury fixed the penalty at death on February 5, 1988. On October 18, 1993, petitioner's conviction and sentence were affirmed on direct appeal. *See People v. Johnson,* 6 Cal.4th 1 (1993).

Petitioner filed a habeas petition on April 22, 1997. On that same day, he also filed his second state habeas petition in the California Supreme Court. On May 2, 1997, respondent filed a motion to dismiss the federal petition on the ground that it contained unexhausted claims. On November 25, 1997, the California Supreme Court denied the second state habeas petition. On

November 26, 1997, petitioner filed an amended federal petition in which he incorporated claims from the second state habeas petition.

Respondent originally filed an Answer, a Memorandum of Points and Authorities in Support of Answer and a Motion for Summary Judgment on October 22, 1999.  The Motion was denied by the Court as premature.  After various matters were resolved, petitioner filed a Traverse; respondent subsequently filed a Supplemental Answer, which included briefing on procedural issues and on the merits of petitioner's claims.  Petitioner filed a responsive Memorandum of Points and Authorities in Support of Non-Hearing Claims; the parties subsequently filed, per Court request, supplemental briefs.  Claims F, G, H, I, J, K, L and W have already been denied by the Court on the merits.   This Order addresses Claims A, B, C, D, E, O, P, Q, R, S, T, U, V, Y and CC.

**FACTUAL BACKGROUND**

The Supreme Court of California summarized the factual background of this case as follows in its opinion disposing of petitioner's direct appeal, *People v. Johnson*, 6 Cal. 4th 1 (1993).  The state court's factual findings are presumed to be correct pursuant to 28 U.S.C. § 2254.

On January 15, 1986, police officers and firefighters were summoned to a house fire in Daly City.  Inside the house, the officers found the bodies of Maria Victoria Holmes, aged 52, and her daughter, Luisa Anna Castro, 32.  The evidence indicated that two fires (one upstairs, and one downstairs) had been intentionally set, probably through the use of some flammable liquid.  Victim Holmes evidently had been severely beaten and kicked.  Her body showed extensive contusions and abrasions; her face was swollen and bloody.  An autopsy indicated she died from 12 or more blows to her head and face.  Victim Castro's body was burned beyond recognition; a large knife was found nearby.  An autopsy determined, however, that she had died from strangulation; a wire was found wrapped tightly around her neck.

Further investigation revealed the following facts: Victim Holmes was a hotel manager who wore expensive jewelry and possessed an extensive collection of gold jewelry from Central America.  She shared her home with her daughter, victim Castro, a nightclub security guard, who was currently dating defendant [petitioner Laverne Johnson], a customer of the club.  Castro also had a collection of gold jewelry and frequently boasted of it.  On the night of the murders, Castro had prepared dinner for defendant at her home after they had driven her children to a babysitter.  Later that evening, someone murdered the two women, stole their jewelry, and set fire to their home in an apparent attempt to cover up the crimes.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Defendant was arrested after a girlfriend, Roshaun Fuller, told police that he had admitted assaulting the women and taking their jewelry. According to Fuller, defendant stated he "knocked out" Castro and, when victim Holmes came upstairs to investigate, he knocked her down and kicked her in the head. Defendant had been seen wearing, and later pawning, some gold jewelry, although it could not positively be traced to the victims. Defendant also admitted to the investigating officers some facts regarding his relationship with Castro, including sharing dinner with her at her home on or about the night of the murders. According to defendant, he left the house after Castro had become intoxicated and fallen asleep. Although defendant denied killing the women, at one point he told the interrogating officer that, "I probably did do it, but you are not going to get me to say I did do it."

The defense offered an alibi (defendant was seen engaging in a bar fight on the day in question) and evidence to cast doubts on Fuller's testimony, which was frequently contradictory and inconsistent. According to a defense investigator, Fuller admitted lying to police regarding defendant's admission that he assaulted both women.

At the penalty phase, the People admitted evidence of defendant's prior crimes, including four prior felony convictions for robbery, burglary, disorderly conduct (transmitting a false alarm), and theft, and numerous unadjudicated offenses including rapes, oral copulation, robberies, batteries and assaults.

The defense relied primarily on background and character evidence, including testimony regarding defendant's troubled childhood, his lack of parental guidance, and the likelihood he would succeed in a supervised prison setting. Defendant personally testified regarding some of the foregoing matters, and attempted to mitigate some of the "prior crimes" evidence by explaining the extenuating circumstances surrounding them.

A defense psychologist, Dr. Fricke, testified regarding defendant's sociopathic personality. On rebuttal, a prosecution psychiatrist stressed defendant's anti-social and manipulative personality, and his potential dangerousness.

*Johnson*, 6 Cal. 4th at 14-16.

## LEGAL FRAMEWORK

### A.      AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court should not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d).[1]  A federal court must presume the correctness of the state court's factual findings, and the presumption of correctness may only be rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The "contrary to" and "unreasonable application" clauses of section 2254(d) have separate and distinct meanings.  *See Williams v. Taylor*, 529 U.S. 362, 404 (2000).  A state court's decision is "contrary to" clearly established United States Supreme Court law if it fails to apply the correct controlling authority or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result.  *Id.* at 413-414.  A decision is an "unreasonable application" of United States Supreme Court law if "the state court identifies the correct governing legal principle . . .  but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 414.   In *Harrington v. Richter*, the Court further stresses that "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'"  131 S. Ct. 770, 785 (2011) (citing *Williams*, 529 U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id.* at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 653, 664 (2004)).

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).  "While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a great[] degree of deference to the state courts."  *Clark v. Murphy*, 331 F.3d 1062, 1068 (9th Cir. 2003).

---

[1] The parties agree that AEDPA applies to this matter.

United States District Court

For the Northern District of California

Holdings of the Supreme Court at the time of the state court decision are the only definitive source of clearly established federal law under AEDPA. *See Williams*, 529 U.S. at 412. While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied. *See Clark*, 331 F.3d at 1070. A state court's decision need not cite to, and a state court need not be aware of, federal law to pass muster under AEDPA; rather, "so long as neither the reasoning nor the result of the state-court decision contradicts [federal law]", the decision may be upheld. *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also*, *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013) (holding that "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits").

When a federal court is presented with a state court decision that is unaccompanied by a rationale for its conclusions, the court has no basis other than the record "for knowing whether the state court correctly identified the governing legal principle or was extending the principle into a new context." *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such situations, federal courts must conduct an independent review of the record to determine whether the state court decision is objectively unreasonable. *Id.* Specifically, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

Even if a petitioner meets the requirements of section 2254(d), habeas relief is warranted only if the constitutional error at issue had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Under this standard, petitioners "may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual

United States District Court

For the Northern District of California

5

United States District Court

For the Northern District of California

1    prejudice.'"  *Brecht*, 507 U.S. at 637 (citing *United States v. Lane*, 474 U.S. 438, 439 (1986)).

2

3    **B.      Ineffective Assistance of Counsel**

4          The Sixth Amendment guarantees the right to effective assistance of counsel.  *Strickland v.*

5    *Washington*, 466 U.S. 668, 686 (1984).  To prevail on a claim of ineffective assistance of counsel,

6    petitioner must show both that counsel's performance was deficient and that the deficient

7    performance prejudiced petitioner's defense.  *Id.* at 688.  To prove deficient performance, petitioner

8    must demonstrate that counsel's representation fell below an objective standard of reasonableness

9    under prevailing professional norms.  *Id.; see also Bobby v. Van Hook*, 130 S. Ct. 13, 18 (2009) (*per*

10   *curiam*) (noting that guidelines, such as those promulgated by the American Bar Association,

11   purporting to establish what reasonable attorneys would do, may be helpful but are not the test for

12   determining whether counsel's choices are objectively reasonable).  This requires showing that

13   counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the

14   Sixth Amendment.  *See Strickland*, 466 U.S. at 687-88.

15

16         The relevant inquiry is not what defense counsel could have done, but rather whether the

17   choices made by defense counsel were reasonable.  *See Babbitt v. Calderon*, 151 F.3d 1170, 1173

18   (9th Cir. 1998).  Judicial scrutiny of counsel's performance must be highly deferential, and a court

19   must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

20   professional assistance.  *See Strickland*, 466 U.S. at 689; *Wildman v. Johnson*, 261 F.3d 832, 838 (9th

21   Cir. 2001); *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).  The reasonableness of counsel's

22   decisions must be measured against the prevailing legal norms at the time counsel represented the

23   defendant.  *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003); *see also Jennings v. Woodford*, 290 F.3d

24   1006, 1016 (9th Cir. 2002).  A difference of opinion as to trial tactics does not constitute denial of

25   effective assistance, *see United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981), and tactical

26

27

28

decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available. *See Bashor v. Risley*, 730 F.2d 1228, 1241 (9ᵗʰ Cir. 1984).

Under AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."  *Richter*, 131 S. Ct. at 785.  The state decision under review need not explain the state court's reasoning, and the habeas petitioner still bears the burden to show there was no reasonable basis for the state court to deny relief.  *Id*. at 784.

To prove counsel's performance was prejudicial, petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  A petitioner must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  *Id.* at 688.  The test for prejudice is not outcome-determinative, *i.e.*, defendant need not show that the deficient conduct more likely than not altered the outcome of the case; however, a simple showing that the defense was impaired is also not sufficient.  *Id.* at 693.

The *Strickland* prejudice analysis is complete in itself.  Therefore, there is no need for additional harmless error review pursuant to *Brecht*, 507 U.S. at 637.  *Musladin v. Lamarque*, 555 F.3d 830, 834 (9ᵗʰ Cir. 2009); *Avila v. Galaza*, 297 F.3d 911, 918 n.7 (9ᵗʰ Cir. 2002).

**ANALYSIS**

**A.      Claim A**

In Claim A, petitioner maintains that the prosecutor presented false and misleading testimony regarding the manner and cause of the victims' deaths.  Petitioner also alleges that his counsel was ineffective in failing to impeach and rebut the pathologist's testimony, and in not retaining another pathologist.  This claim was denied on the merits in a summary opinion by the California Supreme Court.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

Petitioner's claim is based on the testimony of Dr. Peter Benson, a pathologist who examined the bodies of murder victims Castro and Holmes.  Petitioner alleges that Dr. Benson's testimony was erroneous regarding, *inter alia*, the length of time it would have taken to strangle Castro, the number of blows inflicted, and how certain injuries were incurred.  In support of his claim, petitioner cites to two declarations he has submitted by Dr. Thomas Rogers, who asserts that there was no reliable scientific basis for Dr. Benson's conclusions.

Petitioner first argues that Dr. Benson's testimony was elicited in violation of *Napue v. Illinois*, 360 U.S. 264 (1959).  Under *Napue,* it is unconstitutional for the state to knowingly use false or perjured testimony against a defendant to obtain a conviction.  *Id.*  "A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted).  To demonstrate a *Napue* violation, petitioner must show: 1) the evidence in question was false; 2) the prosecution knew or should have known it was false; and 3) the false evidence was material.  *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005).

The Court has reviewed the record, and finds that petitioner cannot demonstrate that the California Supreme Court's summary denial of this claim was unreasonable.  To begin with, petitioner cannot demonstrate that Dr. Benson's testimony was false.  Indeed, petitioner does not challenge the underlying facts[2] to which Dr. Benson referred, but rather his expert opinion based on his analysis of the facts.  For example, petitioner challenges Dr. Benson's testimony that he believed certain injuries were caused by blows, not falls.  As petitioner does and must admit, Dr. Benson testified as to his opinion based on his expert analysis of the injuries received by the victims. Petitioner has cited no case holding that an expert's opinion based on undisputed facts can be

_____

[2] The cause of the victims' deaths – strangulation and burning for Castro and beating for Holmes – was not in dispute at petitioner's trial.

characterized as materially false testimony.  Nor can petitioner cite to any cases establishing that a dispute as to the testimony of an expert renders it "materially false" under *Napue*.  Furthermore, Dr. Benson – unlike petitioner's expert – was extensively cross-examined as to many of the issues to which petitioner refers.  And in fact, on cross-examination, Dr. Benson testified, *inter alia*, that there was a possibility that certain injuries were due to impact with the floor or the wall, and not due to blows.  RT 4576-4620.  As the Ninth Circuit has stated in another context, a "disagreement in expert opinion" does not establish that expert testimony was false.  *Harris v. Vasquez*, 949 F. 2d 1497, 1524 (9th Cir. 1990) (finding that the fact that petitioner's current experts believed his doctor at trial rendered an improper psychiatric diagnosis due to an allegedly inadequate examination does not establish that any testimony was false).

Because petitioner cannot even establish the threshold requirement under *Napue* that the evidence in question was false, he also cannot demonstrate the additional requirements that the prosecutor knew or should have known the evidence was false, or that the false evidence was material.  *See Hayes*, 399 F.3d at 984.  Thus, this portion of petitioner's claim must be denied.

Petitioner next argues that his trial counsel was ineffective with regard to Dr. Benson's testimony.  To prevail on a claim of ineffective assistance of counsel, petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced petitioner's defense.  *Strickland*, 466 U.S. at 686-688.  Here, petitioner cannot demonstrate that his counsel's decisions regarding Dr. Benson's testimony amounted to ineffective assistance.  Under *Richter*, petitioner bears the burden to show there was no reasonable basis for the state court to deny relief, 131 S. Ct at 784, and this he cannot do.

Petitioner argues that further challenge to Dr. Benson's testimony, and/or the testimony of another pathologist, would have undercut the prosecution's showing as to premeditation and deliberation, as well as to intent to kill.  Petitioner's argument is not supported by the record.  To begin with, as discussed *supra*, petitioner's attorney did vigorously cross-examine Dr. Benson.

Additionally, petitioner primarily argues that Dr. Benson was incorrect as to the length of time it took to strangle Castro, and as to whether all the wounds suffered by Holmes were the result of blows,[3] as opposed to falls.  The evidence was undisputed, however, that Castro was found strangled to death and set on fire in the same house as Holmes, who had been beaten and who was found naked from the waist down.  In addition, the victims had been robbed of their jewelry.  Even if a pathologist had testified that it actually took less time for Castro to die from strangulation, or that Holmes had suffered some wounds as a result of a fall, there was more than enough evidence in the record for a jury to reasonably conclude that the killings were premeditated and deliberate, and evidenced intent to kill.

Petitioner also cannot demonstrate that his trial attorney did not have a legitimate tactical reason for avoiding further challenge to Dr. Benson's testimony or retaining a separate pathologist. *See Bashor*, 730 F.2d at 1241.  Competent counsel are permitted to "'make a reasonable decision that makes particular investigations unnecessary.'"  *Richter*, 131 S.Ct. at 788 (citing *Strickland*, 466 U.S. at 691).  Here, petitioner's primary defense at trial was that he had an alibi and did not commit the crimes.  Petitioner's counsel could have reasonably believed that his alibi defense would be undercut by focus on the particular details of the victims' deaths – such as the time it took for one to strangle the death, and the number of blows suffered by the other one –  especially since, as discussed *supra*, the undisputed facts of their deaths were sufficient to establish intent, premeditation and deliberation.

Additionally, even if petitioner had demonstrated ineffective assistance, he would not be able to demonstrate prejudice.  *Strickland*, 466 U.S. at 694.  Even if petitioner's counsel had established, through additional cross-examination or the testimony of a different pathologist, that Castro's death from strangulation occurred more quickly or Holmes suffered fewer blows than Dr. Benson opined,

---

[3] Petitioner does not dispute that at least some of the wounds suffered by Holmes were the result of blows or kicks.

United States District Court
For the Northern District of California

the undisputed evidence at trial, including the circumstances of the victims' deaths, clearly established intent, premeditation and deliberation of the killer.  Accordingly, petitioner cannot demonstrate that any error was so serious that it deprived petitioner of a fair trial.  *Id.* at 688.  This claim must be denied.

**B.     Claim B**

In Claim B, petitioner alleges that the "prosecution's presentation of testimony regarding the manner in which wire, allegedly used to strangle Ms. Castro was cut, was wholly unreliable, irrelevant and inflammatory."  Am. Pet. at 36.  According to petitioner, this admission of evidence violated his constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments and rendered his trial fundamentally unfair.  This claim was denied on the merits by the California Supreme Court in a summary decision.

Petitioner cannot show that the state court's denial of this claim was an unreasonable application of clearly established federal law, or that the state court's opinion relied on an unreasonable determination of the facts.  The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process.  *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir. 1986).  The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."  *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Federal law under § 2254(d)).

Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds.  *See Henry*, 197 F.3d at 1031; *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).  While adherence to state evidentiary rules suggests

11

that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness.  *See id.* (citing *Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir. 1983).  The due process inquiry in federal habeas review is whether the admission of evidence was so arbitrary or prejudicial that it rendered the trial fundamentally unfair.  *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley*, 784 F.2d at 990.  Only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process.  *See Jammal*, 926 F.2d at 920.

Here, petitioner cannot show that the state court's decision denying this claim was objectively unreasonable.  Petitioner specifically objects to the testimony of prosecution expert Mario Soto, who testified that, based on an experiment he had performed, the wire found around the neck of victim Castro was telephone wire that had been cut rather than torn from the wall.  *Johnson*, 6 Cal. 4th at 34-35.[4]  This evidence was used by the prosecution in support of its argument that the killing of Castro was premeditated and intentional.  *Id.*

Even though it would not be determinitive, *see Henry*, 197 F.3d at 1031, there is no showing that the admission of the evidence was improper under state law.  Relevant experimental evidence may be admitted in California courts, *see People v. Bonin*, 47 Cal. 3d 808, 847 (1989), and admission or rejection of such evidence is within the discretion of the trial court.  Cal. Evid. Code § 352.

In this case, the evidence that the wire might have been cut as opposed to ripped out of the wall was arguably relevant to the issue of premeditation; as such, there were permissible inferences for the jury to draw from the evidence.  *See Jammal*, 926 F.2d at 920.  Furthermore, even if it were error for the state court to have admitted Soto's testimony, petitioner would not be able to

---

[4] On direct appeal, petitioner claimed that his counsel was ineffective in failing to object to Soto's testimony.  *Johnson*, 6 Cal. 4th at 34-35.  Here, he claims that the testimonial evidence was improperly admitted, a claim that was denied by the California Supreme Court on habeas.

United States District Court

For the Northern District of California

1   demonstrate that the error had a substantial and injurious effect or influence in determining the

2   jury's verdict. *Brecht*, 507 U.S. at 638.   There was substantial additional evidence of premeditation

3   and intent presented at petitioner's trial, including, *inter alia*, the fact that Castro was killed because

4   of the telephone wire being tightened around her neck for long enough to strangle her.  Regardless

5   of whether the wire was cut or ripped, there was substantial evidence to support the jury's findings

6   regarding premeditation and intent.  Because petitioner can show neither error nor prejudice, his

7   claim must be denied.

8

9   **C.      Claim C**

10          In Claim C, petitioner challenges the testimony of Roshaun Fuller.  He maintains that she

11   suffered from Post-Traumatic Stress Disorder, but that the jury was not informed as to her diagnosis.

12   He argues that either the prosecutor or his counsel should have presented evidence regarding

13   Fuller's alleged PTSD.  This claim was dismissed on the merits by the California Supreme Court in

14   a summary opinion.

15          Roshaun Fuller testified extensively at the guilt phase as to her prior relationship with

16   petitioner.  RT 5070-5351.  She also testified that petitioner had told her about his encounters with

17   victims Castro and Holmes, and that he had stolen jewelry from them and knocked them both

18   unconscious.  RT 5094-5116.  Fuller also testified for the prosecution at the penalty phase.  RT

19   7102-7151.

20

21          Petitioner's argument regarding the prosecutor may be quickly dismissed.  Petitioner

22   concedes he does not have the factual basis to substantiate his claim that the prosecutor knew that

23   Fuller suffered from PTSD[5], and thus acknowledges that he is not entitled to relief on this claim.

24   *See* Petitioner's Memo of P's and A's In Support of Non-Hearing Claims at 60.  Thus, this portion of

25   petitioner's claim must be denied.

26   _____

27          [5] Respondent has provided a declaration from the prosecutor stating that he did not have
     Fuller's psychiatric records and did not know that she suffered from PTSD.  Respondent's Exh. 161.

28

Petitioner also argues that his counsel was aware of Fuller's diagnosis, and that it was ineffective assistance for him not to present evidence of it to the jury. Petitioner maintains that his counsel knew that Fuller was diagnosed with PTSD prior to petitioner's trial, and that his counsel should have sought to introduce evidence of this diagnosis in order to impeach her.

The Court has reviewed the record, and finds that petitioner cannot demonstrate that the California Supreme Court's summary denial of this claim was unreasonable. Under *Richter*, petitioner bears the burden to show there was no reasonable basis for the state court to deny relief, 131 S.Ct at 784, and this he cannot do.

In order to establish ineffective assistance of counsel, petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced petitioner's defense. *Strickland*, 466 U.S. at 688. Here, petitioner cannot demonstrate that his counsel was deficient because, although counsel did not introduce evidence of Fuller's PTSD diagnosis, it is undisputed that Fuller was thoroughly impeached by the defense at trial. As petitioner does and must admit, trial counsel extensively questioned Fuller in an attempt to establish that it was not true that petitioner admitted aspects of the charged crimes to her. In addition, trial counsel strenuously argued that Fuller was unreliable, unbelievable and an untrustworthy liar. RT 6447-6460. Numerous inconsistencies in her testimony were brought to the jury's attention, as well as her inability to remember the details of what she had told the police. RT 5018-5116. Fuller herself testified that she had difficulty remembering some of the things petitioner had told her. RT 5117. She also testified, in response to defense counsel questioning, that she could not remember much regarding her interviews with police, and what she had told them about petitioner. RT 5117, 5163.

Fuller also testified as to her psychiatric problems, stating that she had been "undergoing psychiatric counseling", had "psychological traumas" and had been receiving therapy. RT 5117. Fuller specifically referred to her sessions with Dr. Showghy, who had diagnosed her with PSTD, though she did not testify as to her diagnosis. RT 5208-5209. Fuller also testified as to a prior

United States District Court

For the Northern District of California

arrest, and a civil suit in which she was currently involved.  RT 5209-5210.  Fuller also admitted that she was afraid of the police, and that she was "confused."  RT 5210, 5226.  The California Supreme Court found that the defense had "cast doubt[] on Fuller's testimony, which was frequently contradictory and inconsistent."  *Johnson*, 6 Cal. 4th at 15.  Additionally, petitioner's defense team submitted evidence from an investigator that "Fuller admitted lying to police regarding defendant's admission that he assaulted both women."  *Id.*

On this record, petitioner cannot demonstrate that his counsel was ineffective.  As petitioner acknowledges, Fuller was impeached on cross-examination.  Evidence regarding her arrest record, her psychiatric treatment, her inconsistent statements and her faulty memory were all before the jury.  Her credibility was the main issue addressed by petitioner's counsel, and as the California Supreme Court found, trial counsel effectively cast doubt on her testimony, which "was frequently contradictory and inconsistent."  *Johnson*, 6 Cal. 4th at 15.  Trial counsel effectively revealed and addressed issues of Fuller's credibility in his cross-examination of her.  Petitioner cannot demonstrate that revealing to the jury that Fuller also had a diagnosis of PTSD would have further impeached her.  Petitioner does not cite to any clearly established federal law – or indeed, to any law at all – that suggests that witnesses with a PTSD diagnosis are inherently not credible, incompetent to testify, or prone to lying as a result of their diagnosis.

For the same reasons, petitioner cannot demonstrate that any alleged error was prejudicial to him.  Even if petitioner had established that it was error for his counsel not to introduce evidence of Fuller's PTSD diagnosis, he could not establish a "reasonable probability that, but for counsel's unprofessional error[], the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  The gravamen of petitioner's argument is that evidence of the diagnosis would have called into question Fuller's truthfulness and reliability; as the record clearly demonstrates and as the California Supreme Court's factual findings confirm, Fuller's truthfulness and reliability were already called into question as a result of trial counsel's extensive cross-examination.  There is no

United States District Court

For the Northern District of California

reasonable probability that evidence of Fuller's PTSD diagnosis would have changed the jury's

decision at either the guilt or penalty phases of petitioner's trial. Accordingly, this claim is denied.[6]

**D.      Claim D**

In Claim D, petitioner maintains that the prosecutor presented testimony from Detective

McCarthy that he knew or should have known to be false, and also failed to disclose evidence to the

defense that would have impeached Fuller. Additionally, petitioner argues that his trial counsel was

ineffective in failing to impeach or rebut this allegedly false testimony. This claim was denied on

the merits by the California Supreme Court in a summary opinion.

This claim relates to a particular part of McCarthy's testimony. McCarthy was on the scene

the night of the fire (January 15, 1986), and testified that he observed playing cards and liquor

bottles in the dining room, but that he did not deem them significant at the time. RT 5585. He

spoke to Roshaun Fuller on March 25, 1986, and testified that she relayed certain details to him for

the first time, including that petitioner and Castro were playing poker on the night of the murders,

and that the loser of each hand had to take a drink. RT 5585-5597. McCarthy also testified that he

interviewed petitioner on March 28, 1986, and that petitioner also stated that the card game was

poker and that the loser of each hand had to take a drink. RT 5597-5598, 5604, 5625-5626.

According to petitioner, Peggy Hepa, a friend of Castro's, told police of the drinking and card

playing the night after the murders, rendering false McCarthy's testimony that he was first told that

information by Fuller. Peggy Hepa did testify at trial, and her trial testimony revealed that she had

spoken to police, but did not specify that she had told the police about the poker and the drinking

prior to Fuller. RT 4948-4976.

---

[6] To the extent that petitioner is also arguing that he was denied effective cross-examination
under the Confrontation Clause because of Fuller's PTSD diagnosis, his argument may be quickly
dismissed. As petitioner admits, "a witness is regarded as 'subject to cross-examination' when he is
placed on the stand, under oath, and responds willingly to questions." *United States v. Owen*, 484
U.S. 554, 561 (1988). Fuller was on the stand, under oath, responded willingly to questions, and
was extensively cross-examined. Petitioner's argument is thus without merit.

16

Petitioner relies on a declaration filed by Hepa in support of this claim.  In the declaration, Hepa avers that she told police the morning after the murder that she had spoken with Castro before she died.  Castro told Hepa that she and petitioner were drinking and playing cards, and that the loser of the card game was required to take a drink.  This declaration was added to the record on federal habeas after petitioner filed an unopposed motion to expand the record.  Exh. 6 to Petitioner's Submission Re Expansion of the Record.  Petitioner also submitted a declaration by John Stevenot, his trial investigator, stating that he had also learned from Hepa that petitioner and Castro were playing a drinking card game.  Exh. 7 to Petitioner's Submission Re Expansion of the Record.

These declarations were not part of the record of the state court that decided this claim.  Rather, they were added to the record during federal habeas review.  In *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011), the Supreme Court held that in determining the reasonableness of a state court's ruling under § 2254(d)(1), federal courts are "limited to the record that was before the state court that adjudicated the claim on the merits."  The Court explained that "evidence later introduced in federal court is irrelevant to § 2254(d)(1) review."  *Id.* at 1400.  Accordingly, the Court is not permitted to consider this evidence – namely the declarations of Hepa and Stevenot – in its consideration of this claim.

Even if the Court were permitted to consider this evidence, however, petitioner would not be entitled to relief on this claim.  Petitioner first argues that there was a violation under *Brady v. Maryland*, 373 U.S. 83, 87 (1963) because, according to petitioner, the prosecutor withheld this information regarding Hepa's statements from the defense.  Petitioner goes on to concede, however, that because Hepa told the defense investigator the same information she relayed to the police, he cannot establish a *Brady* violation.  *See, e.g.*, *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) (holding that there is no *Brady* violation where the defense has enough information to ascertain any *Brady* material).  Thus, this portion of petitioner's claim is denied.

United States District Court

For the Northern District of California

Petitioner also argues that McCarthy's testimony was elicited in violation of *Napue v. Illinois*, 360 U.S. 264, 271 (1959).  Under *Napue,* it is unconstitutional for the state to knowingly use false or perjured testimony against a defendant to obtain a conviction.  *Id.*  "A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs*, 427 U.S. at 103 (footnote omitted).  To demonstrate a *Napue* violation, petitioner must show: 1) the evidence in question was false; 2) the prosecution knew or should have known it was false; and 3) the false evidence was material.  *Hayes*, 399 F.3d at 984; *see also Henry v. Ryan*, 720 F.3d 1073, 1084 (9th Cir. 2013).

In considering the merits of this claim, the Court will assume the veracity of Hepa's declaration.  Additionally, the Court will assume that petitioner's assertions both that Detective McCarthy's testimony that he first learned certain details about the drinking card game from Fuller was not true, and that the prosecutor knew or should have known that the testimony was not true.[7] Thus, the Court's analysis of this claim will turn on the materiality of the evidence in question.

To assess materiality, the test is whether there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *Hayes,* 399 F.3d at 984. (quoting *Belmontes v. Woodford*, 350 F.3d 831, 881 (9th Cir. 2003) (internal quotation marks omitted); *see also Napue*, 360 U.S. at 271.  Under this standard, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Hayes*, 399 F.3d at 984 (quoting *Hall*, 343 F.3d at 983-84) (internal quotation marks omitted); *see*

_____

[7] Respondent alleges that the testimony was not false, because McCarthy learned first from Fuller that the card game being played was poker, and Hepa's statement does not indicate that she told police that the card game was poker.  Because the Court finds *infra* that even if the testimony was false, it was not material, it need not definitively resolve whether the testimony was indeed false.  In addition, the Court notes that there is no indication that the state intentionally put on false testimony regarding this issue.

*also Morris v. Ylst*, 447 F. 3d 735, 743 (9th Cir. 2006) (finding that "material" means that there is a reasonable likelihood that the false evidence or testimony could have affected the judgment of the jury).

Here, petitioner is not alleging that whether or not Detective McCarthy learned of the drinking card game from Hepa or Fuller goes to petitioner's guilt or innocence.  Rather, petitioner argues that the issue goes to the credibility of prosecution witness Fuller.  Defense counsel at petitioner's trial had argued that Fuller was fed certain information by the police before she testified to it.  Petitioner alleges that by testifying that the police first learned of the drinking card game from Fuller, McCarthy bolstered the credibility of Fuller as a witness, and countered defense assertions that she was given certain information by the police.  Petitioner also points out that the prosecutor referred to McCarthy's testimony in his closing argument, stating in part that, when reviewing Fuller's testimony:

> Poker and drinking beforehand.  The first thing we ever hear anything about poker being played from Roshaun.  The police saw cards, but nobody said anything about playing poker and loser had to take a shot of booze, until Roshaun.  That's something the police had no clue about.

RT 6390-6392; *see also* RT 6529-6530 (statement by prosecutor that "if you lose the hand of poker you have to drink, that was completely new to the police when they heard it for the first time from Roshaun Fuller").   According to petitioner, the use of the allegedly false evidence to bolster Fuller's credibility renders the evidence material.

The Court has independently reviewed the record, and finds that petitioner cannot demonstrate that the state court's rejection of this claim was objectively unreasonable.   The Ninth Circuit considered a similar *Napue* claim in *Jones v. Ryan*, 691 F. 3d 1093, 1103-1105 (9th Cir. 2012).   In *Jones*, police testified falsely regarding a kicked-in door at a murder scene.  691 F. 3d at 1104.   The testimony regarding the kicked-in door was relevant because – as in the instant case –  it was purported to be one of the details about the crime that a key prosecution witness had learned

United States District Court

For the Northern District of California

from the defendant.  *Id.*  In holding that the false evidence and argument based on it was not material, the Ninth Circuit found that the evidence "was only a small part of the mosaic of trial testimony presented by [prosecution witness] Lana Irwin.  That this detail is inconsistent would not have done much to undermine Irwin's credibility."  *Id.*

The same is true here.  To begin with, had Detective McCarthy testified that he was first told about the drinking card game from Hepa, and not Fuller, there is no reasonable possibility that Fullers's credibility would have been further undermined.  As discussed in detail in Claim C, Fuller's testimony was thoroughly impeached on cross-examination, and she herself testified as to her confusion, her fear of the police and her memory problems.  RT 5117, 5163, 5210, 5226  As the California Supreme Court found, petitioner's defense effectively "cast doubt[] on Fuller's testimony, which was frequently contradictory and inconsistent."  *Johnson*, 6 Cal. 4th at 15.

In addition, petitioner cannot show that McCarthy's allegedly false testimony on this particular point was material.  *See Hayes*, 399 F. 3d at 984.  Petitioner argues that this testimony materially bolstered Fuller's credibility, in that it tended to establish that she was the source for certain evidence.  There was additional evidence, however, for which Fuller was the source.  For example, Fuller was the state's initial source for evidence that Holmes was hit from behind, that Castro was knocked out, that money was taken from Castro's purse, and that jewelry was pawned in Los Angeles.  RT 6529-6531.  The prosecutor referred to all of this evidence in his argument, in addition to the evidence about the drinking card game (RT 6388-6392).  Given this, there is no reasonable likelihood that McCarthy's testimony could have affected the judgment of the jury.   In the context of the record as a whole, the testimony regarding the drinking card game was relatively minor, and cumulative of other evidence the prosecution referred to in order to bolster Fuller's credibility, evidence that petitioner does not contest here.   As such, it was not material, and petitioner is not entitled to habeas relief on this portion of his claim.  *Jones*,  691 F. 3d at 1104.

Petitioner also argues that it was ineffective assistance for his counsel to fail to impeach Detective McCarthy with evidence that he had learned of the card game prior to his interview with Fuller.   Petitioner bases this claim on Hepa's statement that she told petitioner's investigator as well as the police about the drinking card game; petitioner's counsel did not refer to this on his cross-examination of McCarthy.

To prevail on a claim of ineffective assistance of counsel, petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced petitioner's defense.  *Strickland,* 466 U.S. at 686-688 (1984).  A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies.  *See Strickland*, 466 U.S. at 697.  Rather, a reviewing court may proceed straight to an analysis of prejudice when considering an ineffective assistance of counsel claim. *Williams v. Calderon*, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (approving district court's refusal to consider whether counsel's conduct was deficient after determining that petitioner could not establish prejudice).

Here, even if he were able to show deficient performance, petitioner cannot demonstrate prejudice.  As the Court's discussion *supra* demonstrates, petitioner is unable to demonstrate that the evidence at issue was material under *Napue*, *i.e.* that it was reasonably likely to have affected the judgment of the jury.  *Napue*'s materiality standard requires a lesser showing of harm than ordinary harmless error review, s*ee Dow v. Virga*, 729 F.3d 1041, 1048 (9th Cir. 2013), and by extension, a lesser showing of harm than *Strickland's* prejudice standard, which requires a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  If petitioner cannot demonstrate that any *Napue* error was reasonably likely to affect the judgment of the jury, he cannot meet the higher standard of demonstrating that there was a reasonable probability that absent any alleged error of his counsel, the result of his trial would have been different.

Petitioner again argues that this evidence would have undermined Fuller's credibility; as the discussion *supra* confirms, however, Fuller's credibility *was* undermined, and there is no indication that the additional evidence would have been anything but cumulative of the evidence already introduced to challenge Fuller's reliability and credibility as a witness.   Accordingly, petitioner cannot demonstrate prejudice, nor demonstrate that there was no reasonable basis for the state court to have denied relief.  *Richter*, 131 S. Ct. at 784-785.  This claim must be denied.

**E.      Claim E**

In Claim E, petitioner maintains that the trial court improperly admitted evidence of his statements that he made his living by stealing from women.  According to petitioner, the admission of this evidence, as well as the prosecutor's reference to it, violated his right to due process, and constituted improper character evidence.  This claim was denied on the merits by the California Supreme Court in a summary opinion.

A prosecution witness testified that petitioner "liked using women and ripping them off," and that petitioner had "accumulated most of his money by ripping off women who had been friendly to him."  RT 5118**.**  In addition, a prosecution witness testified that petitioner had said that women were "the dumbest creatures on earth."  The prosecutor referred to this testimony in his closing argument, maintaining that it was material to the issue of intent to rob the victims, and as to petitioner's motive to commit the crimes at issue, including robbery.

Petitioner cannot demonstrate that the California Supreme Court's summary denial of this claim was objectively unreasonable under clearly established federal law.   As discussed *supra,* the admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process.  *See Henry* , 197 F.3d at 1031; *Colley* , 784 F.2d at 990.  The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."  *Holley*, 568

F.3d at 1101 (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Federal law under § 2254(d)).

Petitioner does not argue that this evidence was admitted in violation of state law, and he cannot show that evidence of these statements, admitted properly under state law, resulted in a trial that did not comport with fundamental fairness. *Jammal*, 926 F.2d at 919. Petitioner was accused of robbing and murdering two women, and the evidence he now challenges was arguably relevant to the issues of intent and motive. As such, there were permissible inferences that the jury could have drawn from the evidence. *See Jammal*, 926 F.2d at 919-920. Even if the evidence *were* irrelevant or prejudicial, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley*, 568 F.3d at 1101. As such, petitioner is not able to establish that he is entitled to habeas relief.

Furthermore, even if it were error for the state court to have admitted this evidence, petitioner would not be able to demonstrate that the error had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht*, 507 U.S. at 638. There was additional evidence presented at petitioner's trial as to the issues of motive and intent, and also evidence as to petitioner supporting himself with money from women. RT 5001-5042; RT 5079-5335. Because he can show neither error nor prejudice, petitioner's claim must be denied.

**F.     Claim M**

In Claim M, petitioner maintains that the California death penalty statute is unconstitutional. Specifically, he argues that California's death penalty statute fails to adequately narrow the class of death-eligible defendants, in violation of the Fifth, Eighth and Fourteenth Amendments. He also specifically argues that the statute does not appropriately narrow the class of defendants charged

23

United States District Court

For the Northern District of California

1    under multiple murder provisions, as he was.  Petitioner requests an evidentiary hearing on this

2    claim.

3           The Supreme Court has held that states that choose to authorize capital punishment must

4    "define the crimes for which death may be the sentence in a way that obviates 'standardless

5    [sentencing] discretion.'" *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980).  To find a defendant

6    eligible for the death penalty, a jury must both convict the defendant of murder and find true at least

7    one special circumstance.  *Tuilaepa v. California,* 512 U.S. 967, 971-972 (1994) (upholding

8    California's death penalty statute against multiple challenges).  The special circumstance may be

9    contained "in the definition of the crime or in a separate sentencing factor or in both."  *Id*. at 972.

10   Furthermore, in order to pass constitutional muster, the circumstance "may not apply to every

11   defendant convicted of a murder; it must apply only to a subclass of defendants convicted of

12   murder."  *Id.*; *see also, Arave v. Creech*, 507 U.S. 463, 474 (1993).  In addition, the circumstance

13   "may not be unconstitutionally vague."  *Id.*; *see also, Godfrey v. Georgia*, 446 U.S. 420, 428 (1980).

14

15

16           This Court has granted an evidentiary hearing on a similar claim in another capital habeas

17   case.  *See Ashmus v. Martel*, C 93-594 TEH (N.D. Cal.); *see also Webster v. Ornoski*, CV-93-00306

18   LKK-DAD (E.D. Cal.)  Many of the documents and much of the testimony that petitioner would like

19   to rely on to support his argument that California's death penalty statute fails to adequately narrow

20   the class of death-eligible defendants has already been developed in *Ashmus*.  Accordingly, the

21   Court DEFERS ruling on this claim until the *Ashmus* Court renders a decision on the merits.

22   **G.     Claim O**

23           In Claim O, petitioner maintains that the trial court improperly excluded evidence of his

24   future adjustment to prison.  Specifically, he argues that the trial court should have admitted

25   additional mitigating testimony of Dr. James Park, a prison consultant.   According to petitioner, this

26

27

28

testimony should have been admitted in mitigation. The California Supreme Court denied this claim on the merits in a summary opinion.

Trial counsel, in a hearing outside of the presence of the jury, requested that Park be allowed to testify as to certain issues regarding a possible sentence by the jury to life without parole ("LWOP"), including "what kind of placement and custodial situation Mr. Johnson would be in and what protection and security he's going to be subjected to given his record, given the case and, particularly, given some of the allegations involving misconduct here in the San Mateo County Jail, and where he would be placed, and how he would be housed and how he would be secured." RT 8016-8017. The prosecutor stated that he would not object to any testimony regarding current classification procedures, but would object to predictions about the particular outcomes of petitioner's case should he be sentenced to LWOP. RT 8019-8020. After trial counsel stated that they expected Park to testify about currently available procedures, and not specific predictions, the trial court agreed that the testimony was relevant and allowed Park to testify. RT 8020.

Park then testified at length. RT 8021-8054. The prosecutor objected to his testimony on direct examination numerous times. Several of his objections were sustained; the others were overruled. The sustained objections related to questions regarding specific predictions about petitioner's case. No objections were made to Park's testimony on re-direct.

Petitioner argues that Park's testimony was limited in violation of *Skipper v. South Carolina*, 476 U.S. 1, 5 (1976). In *Skipper*, the Court held that a capital defendant was entitled to present evidence in mitigation that he would not pose a danger if he were spared from death and instead incarcerated for life. *Id.* Such evidence "is by its nature relevant to the sentencing determination." *Id.* at 7. Error under *Skipper* is trial error subject to a harmless error analysis. *Id.* at 8. As with other trial errors, *Skipper* errors will warrant relief on habeas only if they had a "substantial and injurious effect or influence in determining the jury's verdict" such that they deprived petitioner of a fair trial in violation of his right to due process. *Brecht*, 507 U.S. at 623.

Here, respondent concedes *Skipper* error.  Specifically, he concedes that it was error for the trial court to sustain certain objections to Park's testimony.  Respondent argues, however, that any error was harmless because, despite the prosecutor's objections, petitioner was able to present evidence that he would not be a danger if sentenced to LWOP.

The Court has reviewed the record and the applicable law, and finds that petitioner cannot demonstrate that the California Supreme Court's decision denying this claim was objectively unreasonable.  While it was error for the trial court to sustain certain objections to Park's testimony, a review of the record demonstrates that, despite this error, petitioner was able to introduce evidence that he would not pose a danger if he were given a sentence of LWOP instead of death.  Accordingly, any error did not result in prejudice under *Brecht*, 507 U.S. at 623.

To begin with, the Court notes the differences between *Skipper* and petitioner's case.  In *Skipper*, the petitioner was prevented from presenting any evidence from two prison employees and a regular visitor of his good behavior in prison during his pre-trial incarceration, because the trial court did not allow petitioner's proposed witnesses to testify.  *Skipper*, 476 U.S at 3-4.  This is not the case here.  Petitioner's proposed witness was allowed to testify; therefore, the pivotal issue is whether petitioner's witness, Dr. Park, was able to present mitigation evidence to which petitioner was entitled under *Skipper*, namely evidence of whether he would pose a danger if sentenced to LWOP as opposed to death.  *Id.* at 4-8.

The record demonstrates that, despite the sustained objections, petitioner was allowed to introduce this relevant evidence.   Dr. Park's testimony was detailed and lengthy and, despite the prosecutor's objections, he did present evidence as to predictions regarding petitioner's future time in prison. RT 8021-8054. Park testified as to, *inter alia*, the classification procedures for prisoners sentenced to LWOP and the institutions available to safely house them.  RT 8032-8033.  He confirmed that petitioner would go to one of several level four (maximum security) institutions.  He also detailed the security measures available to house prisoners such as petitioner, and referred to

United States District Court

For the Northern District of California

pictures of various prison cells.  RT 8038-8041.  Park also testified as to why, in his professional judgment, prisoners with lengthy sentences, even those who, like petitioner, had had problems in county jails, would "settle down" during their incarceration.  RT 8037-8038.

Dr. Park also testified specifically regarding petitioner's situation.  In referring to petitioner's record, he stated without objection that "the reports I've read and when I match it with my experience of prisoners, that this is a – as far as state prison goes, this is a pretty lightweight situation.  I don't see that the state prisons are even going to draw a deep breath in handling the person that has the record that I saw here."  RT 8053.  He further testified that in his opinion and based on his experience, the state prison system effectively and safely houses people who had committed "much more heinous crimes" than petitioner, and that the prison system could "handle [petitioner] without much difficulty at all and with a great deal of protection for everybody concerned, including the prisoner."  RT 8054.

On this record, petitioner cannot demonstrate that any *Skipper* error was prejudicial under *Brecht*.  A review of Park's testimony confirms that, despite the improperly sustained objections, petitioner was able to present his mitigation witness, and the witness was able to testify as to how petitioner would be safely housed were he to be sentenced to LWOP.  RT 8021-8054.  *Skipper* holds that a capital defendant is entitled to present evidence in mitigation that he would not pose a danger if sentenced to life in prison, 476 U.S. at 408, and – despite the trial court's error – petitioner was allowed to present such evidence via Dr. Park's testimony.  Accordingly, the errors here were not harmless and did not deprive petitioner of his right to a fair trial.  *Brecht*, 507 U.S. at 623.  This claim must be denied.

**H.      Claim P**

United States District Court

For the Northern District of California

In Claim P, petitioner maintains generally that the introduction of unadjudicated criminal activity in aggravation at the penalty phase of his trial violated his constitutional rights.[8] This claim contains numerous sub-claims, each of which are addressed below.

### 1.      Instructions on Elements and Ineffective Assistance of Counsel

In this portion of Claim P, petitioner alleges that it was constitutional error for the trial court to fail to instruct on the elements of the unadjudicated offenses, and for his counsel to fail to request such instruction.  These issues were considered in part by the California Supreme Court in a reasoned decision on direct appeal.

> At the penalty phase, the prosecutor introduced evidence of numerous prior unadjudicated offenses by defendant. (See § 190.3, subd. (b).) The record indicates that defense counsel joined the prosecutor in stipulating that, for tactical reasons, it was unnecessary to instruct the jury regarding the elements of these various offenses. Defendant now claims the trial court nonetheless erred, under both federal and state law, in failing to so instruct sua sponte. The point is wholly without merit.

> First, on this record, any error in failing to instruct regarding the elements of defendant's prior crimes would be deemed invited error. (See *People v. Cooper* (1991) 53 Cal.3d 771, 827-831 [281 Cal.Rptr. 90, 809 P.2d 865].) We reject defendant's related assertions that counsel's tactical decision to forgo detailed "other crimes" instructions (1) required defendant's personal waiver, or (2) amounted to incompetent representation. (See *id.* at pp. 827-828 [no personal waiver required], 831-832 [counsel's waiver not incompetence]; see also *People v. Tuilaepa* (1992) 4 Cal.4th 569, 592 [15 Cal.Rptr.2d 382, 842 P.2d 1142].)

> Second, we have held that, because defense counsel might not want the jury to place undue emphasis on the defendant's prior offenses, the court is not required to give such instructions sua sponte. (See *People v. Phillips* (1985) 41 Cal.3d 29, 72-73, fn. 25 [222 Cal.Rptr. 127, 711 P.2d 423].) Although defendant asks us to reconsider *Phillips*, we have frequently relied on its holding and see no reason for reconsideration. (See, e.g., *People v. Tuilaepa*, *supra*, 4 Cal.4th at p. 592; *People v. Hardy*, *supra*, 2 Cal.4th at pp. 206-207; *People v. Pensinger*, *supra*, 52 Cal.3d at p. 1267; *People v. Clark* (1990) 50 Cal.3d 583, 627 [268 Cal.Rptr. 399, 789 P.2d 127].)

*Johnson*, 6 Cal. 4th at 48-49.

Petitioner cannot demonstrate that the California Supreme Court's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law.   A trial court's refusal

---

[8] Cal. Penal Code § 190.3 (b) permits the prosecution to introduce, in aggravation at the penalty phase, evidence of "criminal activity . . . which involved . . . the express or implied threat to use force or violence."

to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceeding. *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). Rather, to obtain federal collateral relief for instructional error, a petitioner must show that the challenged instruction, or lack of instruction, by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("[I]t must be established not merely that the instruction is undesirable, erroneous or even universally condemned, but that it violated some [constitutional right].")

Petitioner can cite to no caselaw establishing that such instructions were required *sua sponte* under either state or federal law. Indeed, California law explicitly holds that such instructions are not required. *See*, *e.g.*, *Phillips*, 41 Cal.3d at 72-73, n. 25 (confirming that a trial court has no *sua sponte* duty to instruct the jury as to the elements of unadjudicated crimes that are introduced at the penalty phase.) As such, petitioner cannot establish that the absence of the instructions was an error so serious that the resulting conviction violated due process. *Estelle*, 502 U.S. at 72.

Additionally, petitioner cannot demonstrate that his counsel's decision, for tactical reasons, to not request instructions regarding the elements of the unadjudicated offenses, was ineffective assistance. To prevail on a claim of ineffective assistance of counsel, petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced petitioner's defense. *Strickland*, 466 U.S. at 686-688. A difference of opinion as to trial tactics does not constitute denial of effective assistance, *see Mayo*, 646 F.2d at 375. Furthermore, tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available. *See Bashor*, 730 F.2d at 1241.

Here, the state court reasonably found that defense counsel had sound tactical reasons for stipulating that it was unnecessary to instruct the jury on the elements of the unadjudicated offenses. *Johnson*, 6 Cal. 4th at 48-49 (finding it reasonable that "defense counsel might not want the jury to

United States District Court

For the Northern District of California

place undue emphasis on the defendant's prior offenses."); *see also*, *Phillips,* 41 Cal.3d at 72-73, n. 25 (holding that "a defendant for tactical considerations may not want the penalty phase instructions overloaded with a series of lengthy instructions on the elements of alleged other crimes, perhaps because he fears that such instructions could result in the jury placing undue significance on such other crimes rather than on the central question of whether he should live or die").  Petitioner cannot cite to controlling federal law that would compel a different result.  Because the state court reasonably found that petitioner's counsel had sound tactical reasons for not requesting an instruction as to the elements of the unadjudicated crimes, petitioner cannot demonstrate that his counsel was ineffective.  *Strickland,* 466 U.S. at 686-688; *Richter*, 131 S. Ct. at 785.  These portions of Claim P must be denied.

### 2.       Impermissible Inference Instruction and Ineffective Assistance of Counsel

Petitioner also alleges that the trial court erred in not instructing the jury regarding the use of other crimes evidence pursuant to CALJIC No. 250.  He also alleges that his trial counsel was ineffective in failing to request the instruction.  The California Supreme Court addressed this claim in a reasoned opinion on direct appeal.

> Defendant contends the court erred in failing to instruct sua sponte (based on CALJIC No. 2.50) that the penalty phase jury should not use the "inference of criminal propensity drawn from proof of one incident of unadjudicated conduct as proof of the truth of the allegations of another such incident." (See *People v. Thompson* (1980) 27 Cal.3d 303, 317 [165 Cal.Rptr. 289, 611 P.2d 883]; Evid. Code, § 1101, subd. (a).) We disagree.

> Generally, the court owes no obligation to instruct on the limited purposes for which evidence of prior crimes is admissible. (See *People v. Collie* (1981) 30 Cal.3d 43, 64 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776].)  Defendant acknowledges the general rule, but argues that it should be inapplicable at the penalty phase of a capital case. In light of the instructions that were given here, we fail to discern a need for such a sua sponte instruction.

> In the present case, the jury was told that (1) evidence of various specified criminal acts had been presented, (2) before the jury could use evidence of any such offense as an aggravating circumstance, it must find beyond a reasonable doubt that such offense occurred, and (3) except for such offenses, the jury "may not consider any evidence of any other criminal acts as an aggravating circumstance." We think the foregoing instructions sufficed to inform the jury of its responsibility to differentiate between the various offenses. Under these instructions, no reasonable

30

United States District Court

For the Northern District of California

1    juror would have concluded that proof of one offense could assist in proving another
     offense beyond a reasonable doubt.

2          We also reject defendant's related contention that counsel's failure to request a
     limiting instruction on the prior offenses reflected his incompetence. As previously

3    indicated, counsel may have deemed it tactically unwise to call further attention to
     defendant's prior offenses by requesting special instructions. (See *People v. Phillips*,

4    *supra*, 41 Cal.3d at p. 73, fn. 25; cf. *People v. Pensinger*, *supra*, 52 Cal.3d at p. 1267.)

5    *Johnson*, 6 Cal. 4th at 49-50.

6

7          As with the prior sub-claim, petitioner cannot demonstrate that the California Supreme

8    Court's denial of this claim was contrary to, or an unreasonable application of, clearly established

9    federal law.  A trial court's refusal to give an instruction does not alone raise a ground cognizable in

10   a federal habeas corpus proceeding.  *See Dunckhurst*, 859 F.2d at 114.  Rather, to obtain federal

11   collateral relief for instructional error, a petitioner must show that the challenged instruction, or lack

12   of instruction, by itself so infected the entire trial that the resulting conviction violates due process.

13   *See Estelle*, 502 U.S. at 72; *Cupp v. Naughten*, 414 U.S. at 147.

14         As the state court reasonably found, *sua sponte* delivery of the instruction in question is not

15   required under California law.  Moreover, petitioner can cite to no clearly established federal law

16   requiring that such an instruction must be given *sua sponte*.  In addition, as the Supreme Court has

17   held, an instruction or lack thereof may not be judged in artificial isolation, but must be considered

18   in the context of the instructions as a whole and the trial record.  *See Estelle*, 502 U.S. at 72.

19   Accordingly, this Court must evaluate jury instructions in the context of the overall charge to the

20   jury as a component of the entire trial process.  *United States v. Frady*, 456 U.S. 152, 169 (1982)

21   (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *Prantil v. California*, 843 F.2d 314, 317 (9th

22   Cir.1988).  As the California Supreme Court found and as the record confirms, the jury was given

23   numerous instructions limiting its consideration of other crimes evidence.  *Johnson,* 6 Cal. 4th at 49-

24   50; RT 8686-8687, 8694-8695, 8697-8700.  Given the above, petitioner cannot demonstrate that the

25   absence of CALJIC No. 2.50 amounted to constitutional error.

26

27

28

31

1    Petitioner also cannot demonstrate that it was ineffective assistance for his counsel not to

2  request a limiting instruction on the use of evidence regarding unadjudicated crimes.   As discussed

3  *supra*, a difference of opinion as to trial tactics does not constitute denial of effective assistance, *see*

4  *Mayo*, 646 F.2d at 375, and tactical decisions are not ineffective assistance simply because in

5  retrospect, better tactics are known to have been available.  *See Bashor*, 730 F.2d 1228 at 1241.

6  Here, as the California Supreme Court reasonably found, there were sound tactical reasons for

7  petitioner's counsel not to request such an instruction, namely a desire to avoid focusing the jury's

8  attention on defendants' prior unadjudicated criminal acts. *Johnson,* 6 Cal. 4th at 49-50.

9  Accordingly, petitioner cannot demonstrate either that his counsel's performance was deficient, or

10  that any alleged deficiency was prejudicial to him. *Strickland,* 466 U.S. at 688-694.  This sub-claim

11  must be denied.

12

13    **3.    Dismissed Charges**

14    Petitioner maintains that the penalty-phase introduction of unadjudicated crimes that were

15  charged and later dismissed violated his constitutional rights.  Petitioner cannot demonstrate that the

16  California Supreme Court's summary dismissal of this claim was unreasonable.  Petitioner does not

17  cite to any clearly established federal law holding that admission of such evidence is

18  unconstitutional.  To the extent petitioner is arguing that use of such evidence violates his rights

19  against double jeopardy, there is no support for such an argument.  In *Dowling v. United States*, 493

20  U.S. 342, 348-354 (1990), the Court held, in a non-capital case, that the subsequent admission of

21  similar evidence from a charge for which defendant was acquitted does not violate double jeopardy

22  or due process.   The Court reasoned that acquittal proved not that defendant was innocent but that

23  there was reasonable doubt as to his guilt, and that subsequent limited use of certain evidence did not

24  constitute subsequent prosecution. *Id.*   The same is true for the use of evidence of unadjudicated

25  crimes that were charged and later dismissed.

26

27

28

United States District Court

For the Northern District of California

Petitioner's reliance on *Johnson v. Mississippi*, 486 U.S. 578 (1988), is misplaced.  In *Johnson*, the penalty phase jury found true the aggravating circumstance that the defendant had previously been convicted of a felony.  *Id.* at 581.  The felony conviction, however, had been reversed.  *Id.* at 583-584.  The Court found that the prosecution had relied solely on the proof of conviction as established by a copy of the defendant's admission to prison, as opposed to introducing any evidence of the alleged felonious acts.  *Id.* at 581.  In such a case, the Court reasoned, reversal of the conviction invalidated the prosecution's use of the documentary proof of conviction, and the jury's reliance on that documentary proof as an aggravating factor.  *Id.* at 586-587.

In petitioner's case, by contrast, the prosecution did not introduce documentary evidence of a conviction that had been reversed, and petitioner is unable to show that admission of evidence of unadjudicated crimes that were charged and later dismissed is in any way comparable to the facts at issue in *Johnson*.  Furthermore, in contrast to *Johnson*, the prosecution at petitioner's trial introduced evidence of the acts themselves, not merely documentary evidence of the charges that were later dismissed.  Because petitioner can cite to no clearly established federal law establishing the relief he seeks, this sub-claim must be denied.

### 4.    Unanimity Regarding Aggravating Factors

Petitioner maintains that the trial court should have instructed the jury that it was required to unanimously find particular aggravating factors, and that the trial court's failure to do so violated petitioner's constitutional rights.  This sub-claim may be quickly dismissed.

Petitioner maintains that a unanimity instruction was required by *Ring v. Arizona*, 536 U.S. 584 (2002).  Even if petitioner was correct that *Ring* requires such an instruction, however, his claim would be without merit because *Ring* is not applicable to cases like his that were final on direct appeal at the time *Ring* was decided.  *See Schriro v. Summerlin*, 542 U.S. 348 (2004).  In addition, petitioner's claim is denied on the merits, because he cannot show that the state court's rejection of

33

1   this claim was contrary to, or an unreasonable application of, clearly established federal law or an

2   unreasonable determination of the facts.

3       **5.      Unitary Jury**

4       Petitioner contends that use of the same jury for both the guilt and penalty phases of his trial

5   deprived him of an impartial jury, and undermined the reliability of the verdict.  Petitioner cannot

6   point to any clearly established federal law demonstrating the state court's summary denial of this

7   claim was objectively unreasonable, nor has he shown the state court's denial of the claim relied on

8   an unreasonable determination of the facts.  Significantly, petitioner can point to no clearly

9   established federal law holding, or even suggesting, that a unitary jury in a capital case is

10  prejudicial.[9]  On the contrary, the Supreme Court has declined to strike down capital punishment

11  statutes which require the same jury to render verdicts at both the guilt and penalty phases.  *See*,

12  *e.g.*, *Lockhart v. McCree*, 476 U.S. 162, 180 (1986); *Gregg v. Georgia*, 428 U.S. 153, 195 (1976).

13  Accordingly, this sub-claim must be denied.   Petitioner's Claim P is denied in its entirety.

14

15  **I.    Claim Q**

16      In Claim Q, petitioner maintains that the prosecution introduced evidence of certain non-

17  criminal activity at the penalty phase, and in so doing violated petitioner's constitutional rights.  This

18  claim was denied on the merits by the California Supreme Court in a summary opinion on habeas.

19

20      Under California law, the prosecution in a capital case is allowed to introduce, in

21  aggravation, evidence of prior felony convictions (Cal. Penal Code § 190.3(c)) and evidence of

22  "criminal activity . . . which involved . . . the express or implied threat to use force or violence."

23  Cal. Penal Code  § 190.3(b).   In addition to introducing evidence of unadjudicated criminal acts as

24  aggravating evidence (*see* Claim P *supra*), the prosecutor sought to offer evidence in rebuttal to

25

26

27  ──────────────

28      [9] California law permits the use of a unitary jury.  *See People v. Bradford*, *supra*, 15 Cal. 4th
1229, 1353 (1997) & Cal. Penal Code section 190.4, subdivision(c).

petitioner's presentation of mitigating evidence.  This evidence included incidents that did not meet the statutory criteria of involving threats of force or violence.

Prior to the penalty phase, petitioner moved to exclude certain evidence that the prosecution wanted to introduce.  CT 944-951.  The trial court noted the applicable law regarding evidence introduced in aggravation, and evaluated the various items sought to be introduced by the prosecutor.  After a lengthy hearing, the trial court admitted some evidence and excluded other evidence.  RT 6631-6779.  The jury was later specifically instructed as to which acts could be considered as aggravating, and also instructed as follows:

> Before you may consider any of such criminal acts as an aggravating circumstance in this case, you must first be satisfied beyond a reasonable doubt that the defendant did in fact commit such criminal act or acts.  You may not consider any evidence of any other criminal acts as an aggravating circumstance.
>
> In this case evidence has been presented of criminal acts other than those listed in this instruction.  You may consider those other acts only in rebuttal of evidence of mitigation offered by the defendant or as evidence of the absence of mitigating or extenuating circumstances raised by the defendant within the law as I have stated it to you in these instructions.
>
> Until the contrary is proved defendant is presumed to be innocent of the criminal acts which have been offered as an aggravating factor and which involved the use or attempted use of force or violence or the express or implied threat to use force or violence, and in the case of a reasonable doubt whether his guilt is satisfactorily shown as to any such criminal act, you may not consider such criminal act as an aggravating factor.  This presumption places upon the state the burden of proving him guilty beyond a reasonable doubt.

RT 8697-8700.

On this record, petitioner cannot demonstrate that the court's denial of his claim was objectively unreasonable under clearly established federal law.  The trial court conducted a full hearing on this issue, and gave the jury a list of the evidence it was permitted to consider as aggravating, as well as the proper standard for evaluation of the evidence.  The jury was also properly instructed that any other evidence of criminal acts could only be considered as rebuttal

United States District Court

For the Northern District of California

evidence.   Petitioner can cite to no caselaw holding that the admission of such evidence is not permitted under these circumstances.

Furthermore, admission or exclusion of evidence in state court is ordinarily not a matter for federal habeas review unless the admission or exclusion violates a particular constitutional guarantee or is so prejudicial that it results in a denial of due process.  *See Estelle*, 502 U.S. at 68; *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998).  Even if the trial court's decision to admit certain evidence at the penalty phase was in error, petitioner cannot demonstrate that any error was prejudicial to him.  *See Brecht*, 507 U.S. at 638.  The case in aggravation presented by the prosecution was extremely strong, and included not only the exceptionally violent circumstances of the crimes for which petitioner was convicted, but also evidence that undisputably met the requirements of section 190.3, such as assaults, rapes and robberies.  Petitioner cannot demonstrate that the absence of the evidence he challenges here would have been reasonably likely to move the jury to impose a sentence of LWOP instead of death.  Because petitioner has failed to establish that any purported state court error had a substantial and injurious effect or influence in determining the jury's verdict, his claim must be denied.

**J.    Claim R**

In Claim R, petitioner maintains that the prosecutor committed prosecutorial misconduct. Specifically, petitioner maintains that the prosecutor committed misconduct with regards to the testimony and evidence at issue in Claims A, B, C, D, E, P and Q.

**1.    Claims A-E: Guilt Phase**

To the extent that petitioner is arguing *Brady* or *Napue* error, those arguments have already been addressed by the Court in the analysis *supra* regarding Claims A-E and are without merit. Petitioner also argues that the prosecutor committed misconduct when he referred to the testimony and evidence at issue in Claims A-E in his closing arguments.

The Court has already concluded that there was no error in the presentation of testimony at the guilt phase from Dr. Benson, Mario Soto, Roshaun Fuller and Detective McCarthy.  *See* Claims A-D.  In addition, the Court has also held that there was no error in the presentation of petitioner's prior statements regarding making his money off of women.  *See* Claim E.  Given that there was no error in the presentation of the evidence at issue, petitioner cannot show that the prosecutor committed misconduct by referring to it.

The Supreme Court has held that when reviewing a habeas claim of prosecutorial misconduct, the relevant inquiry is not whether "the prosecutor's remarks were undesirable or even universally condemned."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations omitted).  Rather, the issue "is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Id.* (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).  Petitioner can cite to nothing indicating the prosecutor's statements were constitutionally improper under Supreme Court decisions, let alone that they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden*, 477 U.S. at 181 (citing *Donnelly*, 416 U.S. at 637).  Accordingly, this claim must be denied.

### 2. Claims P and Q: Penalty Phase

Petitioner also maintains that the prosecutor committed misconduct in introducing at the penalty phase evidence about petitioner's criminal and non-criminal acts (*see* Claims P and Q).  In addition, petitioner maintains that it was misconduct for the prosecutor to refer to this evidence in his arguments at the penalty phase.

The Court has already held that there was no prejudicial error in the introduction of evidence at the penalty phase regarding petitioner's criminal and non-criminal acts.  *See* Claims P and Q.  Given that there was no error in the presentation of the evidence at issue, petitioner cannot show that the prosecutor committed misconduct by referring to it.

37

The Supreme Court has held that when reviewing a habeas claim of prosecutorial misconduct, the relevant inquiry is not whether "the prosecutor's remarks were undesirable or even universally condemned." *Darden*, 477 U.S. at 181. Rather, the issue "is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (citing *Donnelly*, 416 U.S. at 637).

Here, the prosecutor's arguments challenged by petitioner were based on evidence that this Court has held was properly in the record. Petitioner can cite to nothing indicating the prosecutor's statements were constitutionally improper under Supreme Court decisions, let alone that they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (citing *Donnelly*, 416 U.S. at 637). Accordingly, this claim must be denied.

## K.    Claim S

In Claim S, petitioner contends that the jury was improperly instructed regarding its consideration of mitigation evidence at the penalty phase. The California Supreme Court considered this claim in a reasoned opinion on direct appeal. *Johnson*, 6 Cal. 4th at 48-49.

Petitioner cannot demonstrate that the California Supreme Court's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law. In fact, petitioner concedes that the California Supreme Court's opinion was not unreasonable; in addition, the Court's review of the record and the clearly established federal law so confirm. Accordingly, this claim must be denied.

## L.    Claim T

In Claim T, petitioner contends that the trial court's instruction regarding how evidence of other criminal acts, that did not amount to aggravating evidence, could be considered by the jury violated his constitutional rights. This claim was considered by the California Supreme Court in a reasoned opinion on direct appeal.

United States District Court
For the Northern District of California

During the penalty phase, evidence was introduced, without objection by defendant, regarding certain prior criminal activity that did not qualify as aggravating evidence under section 190.3, subdivision (b). For example, mitigating "background" testimony by defendant and his relatives was rebutted on cross-examination by eliciting from these witnesses the fact that defendant had committed numerous burglaries before reaching age 16.

Because the foregoing evidence of defendant's juvenile burglaries was not admissible under section 190.3, the trial court instructed the jury that this evidence could be considered only in rebuttal of defendant's mitigating evidence "or as evidence of the absence of mitigating or extenuating circumstances raised by the defendant. . . . You may not consider evidence of such other criminal acts for any other purpose."

Defendant first contends the foregoing instruction was too broad, permitting the jury to consider defendant's nonviolent misconduct even though it did not truly "rebut" evidence of defendant's troubled childhood. (See *People v. Rodriguez* (1986) 42 Cal.3d 730, 792, fn. 24 [230 Cal.Rptr. 667, 726 P.2d 113] [scope of rebuttal must be specific; evidence must relate to particular incident or character trait relied on by defendant].) But the instruction correctly limited the jury's consideration to rebuttal evidence, leaving it to the jury (guided perhaps by counsel's closing arguments) to decide whether the proffered evidence indeed rebutted any evidence elicited by defendant. If defendant believed the instruction was unclear or incomplete, he had the obligation to request clarifying language. (See *People v. Sully*, *supra*, 53 Cal.3d 1195, 1218.)

Next, defendant contends the instruction improperly allowed the jury to consider his juvenile burglaries as evidence of the absence of mitigating evidence, contrary to the rule in *People v. Davenport* (1985) 41 Cal.3d 247, 288-290 [221 Cal.Rptr. 794, 710 P.2d 861]. *Davenport*, however, dealt with a different problem, namely, the impropriety of prosecutorial argument characterizing as an aggravating factor the absence of particular mitigating factors, such as the defendant's mental defect or disease. By its terms, the challenged instruction did not permit the jury to treat defendant's juvenile burglaries as a negative mitigating factor. Properly construed, the challenged instruction simply would allow consideration of any evidence of defendant's prior criminal conduct that called in question the existence of a mitigating circumstance "raised by the defendant." Once again, defendant had the obligation to request any appropriate clarifying language. ( *People v. Sully*, *supra*, 53 Cal.3d at p. 1218.)

In the present case, defendant does not suggest the prosecutor either committed *Davenport* error or urged the jury to use defendant's juvenile burglaries for any improper purpose. We conclude the court did not err in giving the challenged instruction.

*Johnson*, 6 Cal. 4th at 53-54.

Petitioner cannot show that the state court's reasoned opinion is contrary to, or an

unreasonable application of, clearly established United States Supreme Court law.  Petitioner also

fails to demonstrate that the state court's opinion relied on an unreasonable determination of the

United States District Court

For the Northern District of California

facts.  Petitioner first argues that the state court did not address federal law in its denial of petitioner's claim, suggesting that this claim must be considered *de novo* on habeas review. Petitioner's argument is without merit.  A state court's decision need not cite to, and a state court need not be aware of, federal law to pass muster under AEDPA; rather, "so long as neither the reasoning nor the result of the state-court decision contradicts [federal law]", the decision may be upheld.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Johnson*, 133 S. Ct. at 1096.  Thus, even in the absence of reference to federal law, this Court must accord the state court opinion the deference required under AEDPA.[10]

As discussed *supra*, to obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.  *See Estelle*, 502 U.S. at 72; *Cupp*, 414 U.S. at 147 (1973); *see also Donnelly*, 416 U.S. at 643 (1974) ("[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].").  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  *See Estelle*, 502 U.S. at 72.  If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict, *see Brecht*, 507 U.S. at 637, before granting relief in habeas proceedings.  *See Calderon*, 525 U.S. at 146-47.

Petitioner cannot demonstrate that the instructions of the trial court, taken in their entirety, would have improperly instructed the jurors as to their consideration of the prior criminal activity that did not amount to aggravating evidence, such as petitioner's juvenile record.[11]  It was not

---

[10] AEDPA deference is required both for the portions of the claim addressed on direct appeal, and the limited portions of the claim denied on the merits on state habeas review.

[11] As petitioner admits, much of the evidence regarding his juvenile and adult record was presented by his defense witnesses or through his own testimony, and was part of defense counsel's tactical strategy to present a complete and open picture of petitioner to the jury.  Am. Pet. At 137-138.

United States District Court

For the Northern District of California

objectively unreasonable for the state courts to conclude that the instructions at issue here were not overly broad, but rather "correctly limited the jury's consideration." *Johnson,* 6 Cal. 4th at 53. Furthermore, this Court must consider the challenged instruction in light of the instructions and trial record as a whole. *See Estelle,* 502 U.S. at 72. Here, the trial court specifically instructed the jury that, for acts properly admitted as potentially aggravating, it must find those incidents proved beyond a reasonable doubt in order to consider them. RT 8699. In addition, the trial court instructed the jury that "[y]ou may not consider any evidence of any other criminal acts as an aggravating circumstance." *Id.* There is no clearly established law holding that such instructions – which clearly communicate how the jury is required to assess various evidence of prior criminal or bad act activity – are unreasonable; thus, petitioner cannot show that the California Supreme Court's rejection of this claim was in error under section 2254(d). Accordingly, this claim is denied.

## M.     Claim U

In Claim U, petitioner argues that the trial court failed to properly define the terms "aggravating" and "mitigating" to the jury, and in so doing violated petitioner's constitutional right under the Eighth Amendment to have the jury consider all of his relevant mitigating evidence. Petitioner argues: 1) that the trial court should have defined "aggravating" and "mitigating"; and 2) that the instructions the trial court did give regarding aggravation and mitigation were confusing to the jury, and relied upon by the prosecutor. This first portion of this claim was considered and rejected by the California Supreme Court in a reasoned opinion on direct appeal.

> Defendant asserts the court erred in failing to define the terms "aggravating" and "mitigating" to assist the jury in determining penalty. We have held that the court need not give such instructions, even on defendant's request. (See *People v. Malone* (1988) 47 Cal.3d 1, 55 [252 Cal.Rptr. 525, 762 P.2d 1249].) It follows that no sua sponte instructions were required in this case

*Johnson*, 6 Cal. 4th at 50.

Petitioner cannot show that the state court's reasoned opinion is contrary to, or an unreasonable application of, clearly established United States Supreme Court law. Petitioner also

1   fails to demonstrate that the state court's opinion relied on an unreasonable determination of the

2   facts.  As the state court confirmed, there is no requirement under state law for the trial court to give

3   a set definition of "aggravation" and "mitigation" to a penalty phase jury.  In addition, petitioner can

4   cite to no clearly established federal law requiring such instructions.  Accordingly, this portion of

5   petitioner's claim must be denied.

6

7          Petitioner also argues that the trial court confused the jury with the instructions it did give

8   regarding aggravation and mitigation, and that the prosecutor compounded this confusion in the

9   closing argument.  This portion of the claim was denied by the California Supreme Court in a

10  summary opinion.

11         The Court has reviewed the record, and finds that petitioner's argument is without merit.

12  The Eighth Amendment requires that a penalty phase jury be permitted to consider and give effect to

13  all mitigating evidence submitted by a capital defendant.  *Boyde*, 494 U.S. at 376-377.  "'But there is

14  no [] constitutional requirement of unfettered sentencing discretion in the jury, and States are free to

15  structure and shape consideration of mitigating evidence "in an effort to achieve a more rational and

16  equitable administration of the death penalty.'"  *Id.* at 377 (citing *Franklin v. Lynaugh,* 487 U.S. 164,

17  181 (1988) (plurality opinion)).  Here, petitioner cannot demonstrate that the trial court's

18  instructions and the prosecutor's arguments prevented the jury from considering petitioner's

19  mitigating evidence.

20

21         The trial court gave extensive and detailed instructions to the jury regarding aggravating and

22  mitigating evidence.  RT 8686-8700.  The jury was instructed as to the proper standard for

23  considering criminal acts as aggravating (proof beyond a reasonable doubt), and also specifically

24  instructed about criminal acts that could not be considered in aggravation, but only as rebuttal

25  evidence.  RT 8694-8700.  In addition, the jury was given the following instruction about mitigation:

26

27          You shall consider, take into account and be guided by the following factors,
        if applicable:

28          . . . .

United States District Court

For the Northern District of California

1
2
3
4

K. Any other circumstance which extenuates, that means tends to lessen the gravity of the crime even though it is not a legal excuse for the crime and any sympathetic or other aspect of the defendant's character or record that the defendant offers as a basis for a sentence less than death, whether or not related to the offense for which he's on trial.  You must disregard any jury instruction given to you in the guilt or innocence phase of the trial which conflicts with this principle.

5
6
7
8

RT 8694-8696.  This instructions considered as a whole, particularly given the instruction regarding factor (k), clearly communicated to the jury the limits of what it could consider as aggravating evidence, as well as the fact that what it could consider as mitigating was essentially open-ended.  *See Boyde*, 494 U.S. at 376-377.[12]

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Petitioner also cannot demonstrate that the prosecutor's arguments referring to these instructions were unconstitutional.  As discussed *supra*, the instructions were permissible under clearly established federal law, and therefore the prosecutor's reference to them was also permissible.  The prosecutor correctly referred to what could be considered aggravating evidence, namely the circumstances of the crime, criminal acts involving force or violence, and certain criminal convictions.  RT 8708-8711.  While he did argue, as could be expected from a prosecutor in a capital case, that the defense had not adequately shown mitigation, he also specifically told the jurors that absence of mitigating factors could not be construed as aggravating.  RT 8711.  In addition, petitioner's counsel put on a substantial case in mitigation, and argued vigorously that "based on the evidence, that in order to protect society and properly punish Laverne Johsnon no more need be done . . . to him than to send him to prison for the rest of his life.  That to administer the death penalty in this case, to kill him is something beyond what is necessary in this case."  RT 8787; *see also* RT 8787-8815.

24
25
26
27
28

[12] In *Boyde*, 494 U.S. at 376-377, the Supreme Court considered a more restrictive version of the factor (k) instruction, which did not instruct the jury that it could consider background and character evidence, and found that it was constitutional.  If that version of the factor (k) instruction did not impermissibly restrict the jury's consideration of mitigating evidence, petitioner cannot demonstrate that the instruction given at his trial, which specifically allowed for consideration of character evidence, was unconstitutionally restrictive.

Upon this record, petitioner cannot demonstrate that either the instructions or the prosecutor's arguments referring to them violated any clearly established federal law. Taken as a whole, the instructions and the prosecutor's arguments did not prevent the jury from considering constitutionally relevant evidence. *See Boyde*, 494 U.S. at 376-377. Accordingly, this claim must be denied.

## N.    Claim V

In Claim V, petitioner maintains that the trial court failed to inform the jury that it had the discretion to impose a sentence of LWOP even if it found no mitigating evidence; in so doing, according to petitioner, the trial court violated his constitutional rights. This claim was denied by the California Supreme Court in a reasoned opinion on direct appeal.

> Defendant contends the court erred in failing to instruct the jury that it could impose a sentence of life imprisonment without parole even if it found no mitigating evidence whatever. (See *People v. Duncan*, *supra*, 53 Cal.3d at p. 979 [jury may determine "even in the absence of mitigating evidence" that the aggravating evidence is insubstantial].) We disagree.
>
> The jury was instructed that it should consider, take into account, and be guided by the applicable aggravating and mitigating factors; that the weighing process does not mean "a mere mechanical counting of factors on each side of an imaginary scale, or the arbitrary assignment of weights to any of them"; and that the jury is "free to assign whatever moral or sympathetic value you deem appropriate to each and all of the various factors. . . . " The jury was further told to "determine under the relevant evidence which penalty is justified and appropriate by considering the totality of the aggravating circumstances with the mitigating circumstances. . . .   To return a judgment of death, each of you must be persuaded that the aggravating circumstances are so substantial in comparison with the mitigating circumstances that it [*sic*] warrants death instead of life without parole."
>
> First, defendant does not suggest the foregoing instructions were incorrect, but only that they were inadequate. Yet defendant failed to request clarifying instructions, an omission which bars appellate review of the issue. (See, e.g., *People v. Hardy*, *supra*, 2 Cal.4th at p. 153; *People v. Sully* (1991) 53 Cal.3d 1195, 1218 [283 Cal.Rptr. 144, 812 P.2d 163].)
>
> In any event, we believe the foregoing instruction adequately advised the jury of its sentencing responsibilities. No reasonable juror would assume he or she was required to impose death despite insubstantial aggravating circumstances, merely because no mitigating circumstances were found to exist. Indeed, it seems unlikely the jury would conclude that mitigating circumstances were entirely lacking in this case: the defense introduced substantial evidence in mitigation.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Johnson*, 6 Cal. 4th at 52.

The jury in petitioner's case was read CALJIC No. 8.842, a previous version of which was considered and upheld by the Supreme Court in *Boyde*, 494 U.S. at 376-377. The version upheld by the Supreme Court read in pertinent part:

> If you conclude that the aggravating circumstances outweigh the mitigating circumstances, you shall impose a sentence of death. However, if you determine that the mitigating circumstances outweigh the aggravating circumstances, you shall impose a sentence of confinement in the state prison for life without the possibility of parole.

*Johnson*, 494 U.S. at 374. In response to petitioner's argument that the "shall impose" language unconstitutionally restricted the jury's discretion to impose a sentence of LWOP instead of death, the Supreme Court held that the mandatory language of that version did not prevent individualized assessment and discretion by the jury, and thus was constitutional. *Boyde*, 494 U.S. at 377.

Even prior to the decision in *Boyde*, CALJIC No. 8.842 had been modified in order to address the challenges brought in *Boyde* and other cases. Thus, the version of CALJIC No. 8.842 read at petitioner's trial instructed the jury as follows:

> If you conclude the mitigating circumstances are equal to or outweigh the aggravating circumstances, you must return a judgment of state prison for life without possibility of parole. If you conclude the aggravating circumstances are so substantial in comparison with the mitigating circumstances, you must determine whether confinement in the state prison for life without possibility of parole or death shall be imposed on defendant. To return a judgment of death, each of you must be persuaded that the aggravating circumstances are so substantial in comparison with the mitigating circumstances that it warrants death instead of life without parole.

RT 8702-8703.

Petitioner cannot show that the state court's reasoned opinion is contrary to, or an unreasonable application of, clearly established United States Supreme Court law. Petitioner also fails to demonstrate that the state court's opinion relied on an unreasonable determination of the facts. As the instruction above establishes, and as the state court's decision confirms, petitioner's jury was instructed that it had discretion to impose a sentence of LWOP even if it found that the

mitigating circumstances were outweighed by the aggravating circumstances; necessarily, this would include the absence of mitigating circumstances.[13]  Given that the previous version of CALJIC No. 8.842, with its more restrictive language, was upheld by the Supreme Court, petitioner cannot plausibly argue that the modified version read at his trial violated clearly established federal law. *See Boyde*, 494 U.S. at 377.  The jury was instructed in accordance with state and federal law; accordingly, this claim must be denied.

**O.     Claim Y**

In Claim Y, petitioner maintains that the trial court erred in denying petitioner's motion to modify the death sentence.  This claim was considered and denied by the California Supreme Court in a reasoned opinion on direct appeal.  *Johnson*, 6 Cal. 4th at 54.  Petitioner concedes that the California Supreme Court's decision was not objectively unreasonable; in addition, the Court's review of the record and the clearly established federal law so confirm.  Accordingly, this claim must be denied.

**P.     Claim AA**

In Claim AA, petitioner argues that the California death penalty statute and its applicable instructions are unconstitutional and deprived petitioner of his rights under the Fifth, Eighth and Fourteenth Amendments.

The gravamen of petitioner's argument is that death penalty law is unconstitutional because it fails to narrow rationally the class of murderers eligible for the death sentence.  This claim is related to Claim M, discussed *supra*, but includes different challenges to the California death penalty statute.  Petitioner alleges, *inter alia*, that: (1)  California's death penalty system fails to require that the jury be read instructions defining aggravation; (2) the failure to require the utilization of proof beyond a reasonable doubt standard for all penalty phase determinations is unconstitutional; (3) the

---

[13] Additionally, as the California Supreme Court reasonably held, "it seems unlikely the jury would conclude that mitigating circumstances were entirely lacking in this case: the defense introduced substantial evidence in mitigation." *Johnson*, 6 Cal. 4th at 52.

**United States District Court**
For the Northern District of California

failure to inform a jury that existence of mitigating circumstances does not have to be found unanimously and; (4) the failure to require written jury findings in support of any death verdict is unconstitutional.

As with Claim M, this Court has granted an evidentiary hearing on a similar claim in another capital habeas case. *See Ashmus v. Martel*, C 93-594 TEH (N.D. Cal.); *see also Webster v. Ornoski*, CV-93-00306 LKK-DAD (E.D. Cal.)  Many of the documents and much of the testimony that petitioner would like to rely on to support his argument that California's death penalty statute fails to adequately narrow the class of death-eligible defendants has already been developed in *Ashmus*. Accordingly, the Court DEFERS ruling on this claim until either the *Ashmus* Court renders a decision on the merits.

**Q.     Claim BB**

In Claim BB, petitioner challenges the review process of the California Supreme Court. Specifically, petitioner alleges that the California Supreme Court failed to conduct a constitutionally adequate review of petitioner's case, and institutionally does not conduct such review in capital cases; in so doing, according to petitioner, the California Supreme Court violated petitioner's rights under the Fifth, Eighth and Fourteenth Amendments.

As with Claims M and AA, this Court has granted an evidentiary hearing addressing similar issues in another capital habeas case. *See Ashmus v. Martel*, C 93-594 TEH (N.D. Cal.); *see also Webster v. Ornoski*, CV-93-00306 LKK-DAD (E.D. Cal.).  Accordingly, the Court DEFERS ruling on this claim until the *Ashmus* Court renders a decision on the merits.

**R**.     **Claim CC**

In Claim CC, petitioner maintains that he was deprived of effective assistance of appellate counsel.  Specifically, he maintains that any claims found to be procedurally barred are due to his appellate counsel's ineffective assistance.  This claim was denied by the California Supreme Court in a summary opinion on habeas.

47

United States District Court

For the Northern District of California

As petitioner acknowledges, the Court has not upheld any procedural bars, thus rendering this claim essentially moot.  Even had petitioner been able to show that his appellate counsel's performance was deficient, he would not be able to show prejudice, because the Court has concluded that all of petitioner's claims may be considered on the merits on habeas.  Thus, this claim is denied.

### CONCLUSION

For the foregoing reasons:

1.     Claims A, B, C, D, E, O, P, Q, R, S, T, U, V, Y and CC are DENIED.

2.     Claims M, AA, and BB are DEFERRED pending a decision in *Ashmus v. Martel*, C 93-594 TEH (N.D. Cal.).  Claims Z and DD, involving allegations of cumulative error, are also DEFERRED.

3.     Claims N and X will be addressed in a separate Order.

**IT IS SO ORDERED.**

DATED: 05/12/2014

THELTON E. HENDERSON
UNITED STATES DISTRICT JUDGE